MARY E. DANIELS, Respondent, *v.* THE EMPIRE STATE SAVINGS BANK of Buffalo, Appellant.

*Savings bank — liability of, for a deposit abstracted by the treasurer — effect of intrusting the bank manager with a blank check.*

In an action brought to compel the defendant, a savings bank, to credit the plaintiff with a deposit of $10,075, the defendant sought to charge the plaintiff with a check of $4,000.   It appeared that the plaintiff had dealt with the defendant from 1868 to 1892; that during this period Edward S. Dann was its secretary and treasurer and general financial manager; that in 1875, while the plaintiff was unmarried, she went to Europe and left with Dann some blank checks signed by her which were to be filled out by him during the period of her absence as she should from time to time direct; that she returned to this country in 1876; that thereafter, in April, 1879, without authority, Dann filled out one of these blank checks for $4,000, which was not charged to her upon her pass book, never went through the bank and was never paid, and presumably was used by Dann to cover up his fraudulent transactions with the bank; that after the marriage of the plaintiff, and on June 17, 1892, her husband

deposited for her $10,075, which was not entered in her pass book at the time, but was received by Dann and put by him in the bank vault in a package.

On June 20, 1892, the State bank examiners discovered that Dann was a defaulter, and soon after the discovery was made the bank vault was opened, and it was then found that the package had been appropriated and in its place was substituted a slip in Dann's handwriting, stating that $10,075 belonged to the plaintiff; subsequently, upon a threat of criminal prosecution, he restored to the bank the sum of $10,000.

*Held,* that the bank was properly charged with the deposit;

That the plaintiff should not be charged by the bank with the $4,000 check simply because she had intrusted Dann, the general manager of the bank, with a check signed by her but not filled out;

That the knowledge of Dann was the knowledge of the bank, and that Dann knew of the plaintiff's return from Europe to this State, of her marriage, and that his agency had been revoked at the time when he filled out the check, and the bank was, therefore, chargeable with knowledge of those facts;

That the rule that where one of two persons must lose, that one should lose who made the loss possible, did not apply to this case.

APPEAL by the defendant, The Empire State Savings Bank of Buffalo, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 14th day of June, 1895, upon the decision of the court rendered after a trial at the Erie Special Term.

The defendant is a savings bank, organized and existing under the laws of this State, and carrying on the ordinary business of a savings bank at the city of Buffalo. Prior to September, 1892, it transacted business under the name of the National Savings Bank of Buffalo. From the year 1868 until the commencement of this action the plaintiff had been a depositor in, and had large financial transactions with, the bank. During all that time, and up to the latter part of June, 1892, one Edward S. Dann was the secretary and treasurer and the general financial manager of the bank. Upon the 17th day of June, 1892, the plaintiff's husband took the sum of $10,075 in currency, which had that morning been paid in upon a mortgage, to the bank and left it with Mr. Dann. He did not have his wife's pass book with him at the time of leaving the money, and it appears that Mr. Dann, after counting the same, made a package of it and placed it in the bank vault instead of mingling it with the other funds of the bank. Upon the following Monday, the twentieth of June, the State bank examiners having instituted an examination of the bank, discovered that Dann had been for many years

appropriating the moneys of the bank, and that, to a considerable extent, he had used the plaintiff's account to conceal his fraudulent transactions. Soon after the discovery was made the bank vault was opened, and it was then found that the money left by the plaintiff's husband the Friday previous had been appropriated, and in its place was substituted a slip in Dann's handwriting which read as follows:

" June 17, 1892. $10,075.00 belongs to Mary E. Daniels, paid in for mortgage, per Judge Daniels."

After the defalcation of Dann was discovered, and criminal prosecution had been threatened, he restored $10,000 of the money abstracted by him. Upon further examination of the affairs of the bank a check was discovered which bore the signature of the plaintiff, and was dated the 16th day of April, 1879, for the sum of $4,000. This check had not been charged against the plaintiff upon her pass book, although a lead pencil entry thereof had been made under the date of April 16, 1879, by Mr. Dann.

This action was brought for the purpose, among other things, of compelling the defendant to credit the plaintiff with the sum of $10,075 as a deposit of that amount, and the defendant, on the other hand, sought to charge the plaintiff with the $4,000 check. The trial court found that the $10,075 was left by the plaintiff's husband at the bank by way of deposit, and that the bank should be charged with the same, and it also refused to charge the plaintiff with the $4,000 check.

*Charles Daniels,* for the respondent.

*George A. Lewis,* for the appellant.

ADAMS, J.:

The evidence furnished by the plaintiff upon the trial of this action abundantly justified the conclusion reached by the learned trial court in regard to the transaction of June 17, 1892. No exception has been taken to such conclusion, and, therefore, so far as that feature of the case is concerned, it is entitled to no further consideration.

The main contention upon the argument, and the only one which the appellant is entitled to urge upon the attention of

this court, relates to the $4,000 check. It appears that, in 1875, the plaintiff, whose name was then Mary E. Enos, went to Europe for the purpose of spending a year in travel; that prior to her departure she left one or more checks, signed by her in blank, with Mr. Dann, with instructions to use them in accordance with directions which he might thereafter receive from her, and the check in question was undoubtedly one which had been so left by her with Dann. He had subsequently filled it up and dated it as of April 16, 1879, although prior to that time she had returned from Europe and married her present husband, Judge Charles Daniels. There is no evidence that the check was ever paid or that it had ever gone through the bank, and the reasonable inference to be drawn is, that it was used from time to time by Mr. Dann to cover some of his fraudulent transactions with the bank.

Upon this state of facts it is difficult to discover upon what theory it can be claimed that the learned trial court erred in its refusal to charge the plaintiff with the amount of this check. The learned counsel for the appellant advanced several propositions upon the argument in support of his contention, none of which we think is tenable, and the whole ground is so completely covered by the elaborate opinion of the learned trial justice that but little need be added to what is there so well said.

Considerable stress now appears to be laid upon the fact that the check in question was in no way altered by Dann, and that in filling it up as he did, he was acting within the scope of his authority as the plaintiff's agent. The obvious answer to this contention, however, is that the agency conferred upon Dann by the plaintiff was for a particular purpose and to cover only such time as she should be absent from the country, and it undoubtedly terminated with her return to America in 1876. Two years thereafter she changed her name from Enos to Daniels. These facts were, of course, all well known to Dann, and his knowledge was the knowledge of the bank (*Gibson* v. *National Park Bank of New York*, 98 N. Y. 87), and with this knowledge it is difficult to see anything in this contention upon which the defendant can rest its claim that the plaintiff should be charged with the amount of this check.

Again, it is urged that the bank is entitled to the benefit of this check, upon the principle that when one of two innocent parties

must suffer by reason of a fraudulent transaction, it shall be the one whose act made it possible for the fraud to be perpetrated. This principle might be invoked with great propriety if the circumstances of the case were different. In other words, if Dann sustained the relation of a third party simply, and had no connection with the bank. But here, confessedly, he was not only the secretary and treasurer of the bank, but he had the general charge of its affairs, and was in fact himself *the* bank, and bearing this intimate relation to the bank, it would be a strange perversion of the rule to hold that he might perpetrate a fraud like the one in question, and yet the bank itself be permitted to profit thereby.

We are unable to discover any error in the disposition made of this case in the court below, and are, therefore, of the opinion that the judgment appealed from should be affirmed.

LEWIS, BRADLEY and WARD, JJ., concurred.

Judgment affirmed, with costs.